## CAROLINE C. PRATT

*v.*

## DAVID A. BOODY et al.

1. Where, pending an action involving accounts between defendants and complainant's testator, complainant brings a bill to enjoin such action and for a discovery and accounting as to the same transactions, and the discovery is fully obtained by defendants' sworn answer to complainant's bill, such bill will be considered as merely ancillary to complainant's defence in the action at law, and an injunction will not be granted.

2. The statutory action (*Rev. p. 476; Gen. Stat. p. 1679*) to enforce a joint liability against the heirs and devisees of a testator being a purely legal remedy, equity will not enjoin its prosecution or interfere with it except for the purpose of granting a discovery or other merely ancillary relief.

3. A bill to enjoin an action brought under *Rev. p. 476 (Gen. Stat. p. 1679)* to enforce a joint liability of the heirs and devisees of a testator for a claim on an account against testator, may be sustained in so far as it seeks to compel a delivery and return of securities deposited by testator with defendants, since such relief is purely equitable and could not have been given in the action at law on the account.

4. In a suit to restrain prosecution of an action at law on an account against complainant's testator, defendants set up by cross-bill a claim against complainant as executrix and sole legatee of the testator on the same account.— *Held,* that they were entitled to relief on the cross-bill, though complainant's right to an injunction was denied on the ground that the law court could settle the account, and defendants, in their answer, had denied jurisdiction of the court to entertain complainant's bill for an injunction.

5. Equity has jurisdiction of a claim against the executrix and sole legatee for settlement of an account against the testator, since the statutory method of enforcing the liability of the legatee by means of a suit on the refunding bond would be inadequate, on the ground that the bond, if given in such case, would have been made by the legatee payable to herself as executrix.

6. Purchases and sales of stocks on a stock exchange, made by defendants as brokers for complainant's testator, did not form a gaming transaction if the stocks were actually bought and delivered and there was not a mere dealing in differences between prices or speculations on the rise and fall of the market.

7. Evidence that statements of the purchase and sale of stocks by defendants, who were testator's brokers, were reported to testator as soon as made, and that monthly statements were submitted to him, showing the state of the accounts, and that he had previously examined such accounts and made no

objection thereto, does not sufficiently show an account stated which can be enforced as such between defendants and his executrix.

8. The burden of proving that transactions relating to the purchase and sale of stocks, which are in form transactions between the customer as principal and the broker as agent, are wagering contracts, rests on the party asserting their illegality.

Heard on bill and answers, cross-bill and answer, and replications and proofs taken orally.

. This case is heard on bill, cross-bill and answers, and the issues as presented on the record involve a number of questions relating to equitable relief, some arising on the bill and others on the cross-bill. One issue, and a fundamental issue, on both the bill and cross-bill, is whether a balance of account claimed by the defendants, Boody, McLellan & Company, to be due to them on their transactions as brokers for Charles E. Pratt, deceased, in his lifetime, is a valid claim, or whether it is illegal and invalid, because it is based, either wholly or in part, upon gambling or wagering transactions in stocks. The other issues arise collaterally out of this main question. Charles E. Pratt died about January 22d, 1891, testate, and by his will, his wife, the complainant, was the legatee and devisee of all his estate, real and personal, and the sole executrix of the will, which she duly proved. Charles E. Pratt also left heirs-at-law surviving him, and on August 30th, 1893, the defendants commenced an action at law in the supreme court against the complainant, as devisee, and against the heirs-at-law of Charles E. Pratt, to recover against them jointly the balance of account claimed to be then due ($52,533.88, with interest from August 1st, 1893), and to the declaration in this suit the complainant filed separate pleas, including a plea of payment with notice of a set-off of a claim for $13,618.71, with interest from September 1st, 1893, alleged to be due to complainant from the defendants as a balance on their own account with her individually.

After this suit was commenced, the defendants brought another suit in the supreme court against the complainant alone, in which suit the complainant also filed pleas of general issue and payment,

Pratt *v.* Boody.

with notice of set-off for the above claim of $13,618.71. The defendants are willing to discontinue this latter suit, alleging that it was commenced by mistake, but the complainant refuses to consent to its discontinuance.

The complainant also, on August 29th, 1893, one day before the commencement of the joint action in the New Jersey supreme court, by defendants, against her as devisee and the heirs-at-law of C. E. Pratt, herself commenced an action against the defendants in the court of common pleas of the city of New York, to recover from the defendants the above balance ($13,618.71) alleged to be due her.

These three actions at law being all pending, the complainant, on December 9th, 1893, filed her bill in this cause (amended on December 28th, 1893) for a discovery under oath of the transactions of defendants with Charles E. Pratt in his lifetime, for the taking of an account in equity instead of at law, and also to compel the return to complainant of certain securities which were delivered to defendants by Charles E. Pratt in his lifetime, and which they still hold. The bill alleges that these securities were assigned and given by Charles E. Pratt to the defendants without consideration and as margins to secure and pay losses accrued or to accrue and become due to the firm from Pratt in speculation in fluctuations in the price of stocks, bonds and other securities which the firm might purchase or sell on account of Pratt, and it prays that any of the assignments or securities for this purpose may be decreed to be illegal and void, and the bonds, mortgages and other securities reassigned and delivered to complainant. The basis of the claim to transfer the jurisdiction over the account from a court of law, where it was pending, to the court of equity, was placed in the bill upon the complication and extent of the accounts, the necessity for discovery, as to credits to be made, and other information. Upon filing the bill an interlocutory injunction was issued restraining the defendants from proceeding in the action at law commenced by them against the complainant as devisee, and from commencing any other action or proceeding at law against her as devisee concerning the account. The defendants answer the bill under oath, giving

12

the discovery asked, annexing a copy of the account to the answer, being the same account served as a bill of particulars in the suit at law, and disclosing the securities which they hold or claim to hold as collateral for the account. They deny that these securities were delivered, as alleged in the bill, to secure defendants in Pratt's speculation through them in the fluctuations in the prices of stocks &c., and they say, under oath, that no agreement or arrangement, either express or implied, was made by them with Pratt whereby they were to buy and sell stocks for him for the purpose of speculating in the fluctuations in prices, but that each sale or purchase was made on Pratt's express order, and the purchases or sales ordered were actually made, and when purchases were made the certificates held by them subject to Pratt's order and either delivered to him or afterwards sold, as ordered. They claim, therefore, to hold the securities in their hands as collateral to secure the account. They further deny the jurisdiction of the court of equity to take the account, alleging that no reason exists why it cannot be taken at law. By cross-bill, however, which is annexed to the answer, the defendants seek to recover this balance of account by decree of this court, and ask the following relief, based on their account:

Complainant, as the sole legatee and devisee of Charles E. Pratt, has taken possession of all his estate, real and personal, and holds all his estate to her own use, except so much as has been paid out by her for the debts of decedent. Defendants allege that they filed their claim with complainant as executrix, duly verified; that complainant has never filed any inventory or rendered any account of the estate, and they ask a discovery of assets, with a decree against her as legatee and devisee, to the extent of assets received for the balance now due on the account.

They admit, also, that a balance is due from them to complainant upon her individual account, but they allege that this balance so due ($13,618.71) is, by virtue of an agreement made with them, held as security for the balance due on the Charles E. Pratt account and should be credited thereon, and they ask an injunction against the prosecution of this claim by complainant, either

by set-off in the New Jersey suits or by the action in New York. On this cross-bill a restraining order to this effect was granted, and, together with the restraining order issued on the amended bill, has been continued pending final hearing. Defendants also claim in their cross-bill that complainant should account to them for the proceeds of a certain mortgage for $5,000 on Arizona property, which they also held as part of the collateral for Charles E. Pratt's account, and which was delivered, after his death, to complainant's agent, upon his agreement to collect the amount and deliver to them, but which he collected, and they charge that, in violation of the agreement, he delivered the proceeds of collection to complainant. The complainant, answering the cross-bill, admits the delivery of this security to her son, but alleges that it was delivered because it was of no value to defendant in its then condition, and denies it was delivered for the purpose of raising money on it for the benefit of defendants.

*Mr. Benjamin A. Vail*, for the complainant.

*Mr. Willard P. Voorhees* and *Mr. Alan H. Strong*, for the defendants.

EMERY, V. C.

The discovery sought by complainant's bill has been obtained by the answer, under oath, to which no exception has been taken, and as the bill, to this extent, must be treated as purely in aid of the complainant's defence in the action at law against her, that action must now be allowed to proceed unless the relief which the complainant claims entitles her to a continuance of the injunction against the further prosecution of that suit. *Henwood* v. *Jarvis, 12 C. E. Gr. 247, 250 (Chancellor Runyon, 1876)*, and cases cited. The right to further enjoin the suit at law is based upon the claim that the extent and complications of the accounts require them to be taken in equity instead of at law. Now that the discovery has been granted, and the *status* of the accounts has been shown by the evidence, I am of the

opinion that the accounts may be as well taken at law as in equity, and that nothing in the character of the accounts is sufficient to divest the court of the jurisdiction it has acquired over them. And there are two reasons why, in this particular case, the jurisdiction of this court, so far as the action at law is concerned, should be strictly confined to ancillary relief. In the first place, this action at law is an action to enforce a joint liability of the devisee and heirs-at-law which is imposed by statute. *Rev. p. 476; Gen. Stat. p. 1676.* This is a legal liability purely, not an equitable one, and a court of equity has no right to inquire into or enforce the liability of devisees under this statute. *Meeker* v. *New Jersey Insurance Co., 8 Vr. 282, 299; Mutual Insurance Co.* v. *Hopper, 16 Stew. Eq. 387; affirmed, 17 Stew. Eq. 604; Holley* v. *Weedon, 1 Vern. 400; Edwards* v. *McClave, 10 Dick. Ch. Rep. 151.*

And if the court of equity has no right to enforce the liability under the statute, it has no right to interfere with the action, except in aid of the prosecution or defence, by discovery or other ancillary relief. Again, the vital question raised in relation to the account, is its illegality as based on a gaming or wagering contract, and this is a question of fact peculiarly appropriate in this case for the decision of a jury, and either party has the right to the judgment of that tribunal and of the law court upon the questions involved. So far as a permanent injunction against defendant's suit at law, against her as devisee, is concerned, the relief to complainant must be denied. But the complainant's bill is also filed to compel the delivery and return of securities deposited to secure the account, and as this is a purely equitable relief, beyond the power of a court of law to administer, the complainant has the right to call upon this court for an adjudication as to the validity of this claim upon the facts here presented.

And the defendants also, upon the case presented in their cross-bill, and notwithstanding the denials of jurisdiction in their answer to complainant's bill to enjoin the suit at law, have the right to call upon a court of equity to establish their claim against the decedent's estate, in order that they may obtain a

decree against the complainant, as the sole legatee of the personal estate, to satisfy the claim out of these assets.   This is the general rule as to the liability of legatees.   *3 Wms. Ex.* *1313, *1314.*   This liability of legatees is an equitable liability, independent of statute, and is not a legal liability except to the extent provided by statute under our Orphans Court act, section 67. And the complainant being sole legatee, who, as appears by her bill, has taken possession of all the assets of the estate as her own, after paying the claims presented to her as executrix, the statutory method of enforcing the liability of a legatee by means of a suit on refunding bond (which would be her own bond payable to herself as executrix) does not seem to be applicable.   In this suit, therefore, as well on the cross-bill against complainant as legatee, as upon the bill of complainant to deliver the securities, this court has the right and is obliged to decide upon the question of the legality of the claim.   This question is one altogether of fact, and must, so far as this case is concerned, be decided upon the proofs here presented.   The decedent, Charles E. Pratt, commenced dealing with the defendants as brokers, in the city of New York, in April, 1888, and these dealings continued until his death, January 20th, 1891, the defendants' firm in the meantime, and on January 1st, 1889, being changed by the withdrawal of one member.   These dealings consisted mainly, but not entirely, of the purchase and sale of stocks, bonds &c. on the New York stock exchange, and the proofs show that these purchases and sales were made on Pratt's orders, and that the purchases and sales were actually made by the brokers who held the stocks &c. purchased as security for the account.   The balance due from Pratt results from the transactions which include these purchases and sales, together with defendants' charges for commission and interest.   In form, the relation between Pratt and the brokers was that of principal and agent, but in reference to stock transactions of this character the rule is settled in our state that the inquiry is whether the real transaction between the broker and his customer is a mere dealing in the differences between prices, and in which the broker is really a principal and not an agent.

This was the rule settled in *Flagg* v. *Baldwin*, *11 Stew. Eq. 219* (*Errors and Appeals, 1884*), and the court in this case having found, as matter of fact upon the evidence in the cause (see *p. 231*), that the contracts were mere wagers, and that it was never contemplated, intended or agreed by either the customer or the brokers that the stocks purchased or sold were to become or be treated as the stocks of the customer, they held that the real contract was one merely to receive and pay differences. The transactions were, therefore, held to be invalid, as mere wagering contracts within the meaning of our statutes against gaming, and were held to be contrary to the public policy settled by these laws. And it was further decided that this policy was to be enforced, in a case where our courts were called upon to enforce, in this state, securities given by the customer upon the illegal transaction, although the illegal transactions occurred in another state. The dealings in the present case arose altogether in New York, and on the assumption that a complainant, filing a bill to compel the return of personal securities, voluntarily delivered in an illegal transaction in another state, and whose case, therefore, is not based on our statutes against gaming in this state, has the same equitable *status* as a defendant resisting the enforcement of the illegal contract, the question is whether the transactions in this case were illegal under the rule laid down in *Flagg* v. *Baldwin*. Each case under this rule must depend upon the *intention* of both parties, that of the broker as well as of the customer, to be deduced from the evidence produced in each case, but, as I understand the application of the rule, the burden of showing that transactions relating to the purchase and sale of stocks, which are, in form, transactions between the customer as principal and the broker as agent, are in reality wagering contracts in which the broker is really a principal, must rest upon the party asserting the illegality. Applying these rules to the whole evidence in the case, my conclusion is that the complainant has failed to show that the transactions were a mere dealing in differences, and that upon the whole evidence, including the answers of defendants, which were called for under oath, the defendants have established by a pre-

ponderance of evidence that, so far at least as they were concerned, the transactions were intended to be real and legitimate purchases and sales as agents for Pratt.   Apart from the transactions themselves, the only direct evidence as to the nature of the dealings between Pratt and his broker is that furnished by the answers of the defendants which were put in under oath. These answers deny that there was any agreement for the purchase and sale of stocks or bonds, for the purpose of speculation in the fluctuation in prices.   In this vital point the case differs from *Flagg* v. *Baldwin*, where such agreement was affirmatively proved and was held to be clearly made out.

The main reliance of the complainant in this case to make out the illegal character of the transaction is the account itself. It began in April, 1888, and up to February 1st, 1889, shows dealings, purchases and sales to the amount of nearly $500,000, and up to this latter date, the account itself, as explained in the evidence, shows the actual delivery to Pratt of a very large proportion of stocks and bonds purchased for him by defendants upon his orders.   On February 1st, 1889, the balance due from Pratt to the defendants, as appears by the account, was $120,739.94, and the defendants, to secure this balance, held stocks and bonds to the par value of $168,000, the market value not being proved.   From this date up to the time of Pratt's death, the purchases amounted to $2,400,000, and the proportion of deliveries of stock to Pratt was not larger than five per cent.   The account between February 1st, 1889, and January 20th, 1891, also includes the sale of some of the securities held on February 1st, 1889, to secure the balance then due, the validity of which balance cannot, *on the mere face of the accounts*, be well disputed.   I do not understand complainant's counsel to insist that, up to this date (February 1st, 1889), the account itself justifies the inference that it was an illegal or wagering account.   The real question of fact is, what inference as to the legality of the transactions is to be drawn from the subsequent state of the accounts.   During February, 1889, the purchases amounted to over $200,000 and the actual deliveries to $47,000. From this time until January 1st, 1890, the purchases were

over $1,500,000, without any deliveries except $556, in July, 1889. From January 1st, 1890, to Pratt's death, in January, 1891, the purchases were over $650,000, while the actual deliveries to Pratt, during this period, amounted to $57,337, or nearly ten per cent. Complainant insisted that the small proportion of deliveries is sufficient to justify the conclusion that both parties intended the account to be a mere settling of differences, without any deliveries. But this inference does not seem to me to be justified. The account on its face would justify an inference that after February, 1889, Pratt changed his method of purchases and sales by making more frequent and numerous turns in the market, and that he was speculating through defendants, but it is not sufficient to show that actual deliveries were excluded by agreement. Pratt still required and received deliveries from time to time, to a not inconsiderable amount, and so long as these deliveries continued to be made to the extent admitted, there is no clear basis for any inference that it was understood between the parties that the account was a mere speculation in differences. These deliveries are not explained by complainant as they should be, on her theory that there was an actual wagering contract, which provided for no delivery, and their importance in deciding as to the validity of the whole account, which included them, as well as others, must, as it seems to me, be very great.

These deliveries, unexplained by complainant, corroborate the defendants' claim that the whole account, from the beginning, is based upon the legitimate dealings between them and the deceased, as his agent, and were not intended to be mere speculations in differences. The letters of the defendants to Mr. Pratt, of January 17th and January 19th, 1890, relied on by complainant, undoubtedly show that, at that time, Pratt was speculating in the fluctuations of prices in the specially-named stocks, through defendants, but they are not sufficient, in my judgment, to show that it was understood between Pratt and the defendants that, even as to these particular transactions, actual deliveries were excluded by reason of anything in these letters in case the transaction could not be closed out as di-

rected.    Much less can these letters be sufficient to invalidate
the whole series of transactions between the brokers and their
customer.    Upon the whole evidence presented in this case, I
conclude, therefore, that the account of the defendants is not
shown to be based upon an illegal wagering transaction or agree-
ment, and that the defendants are entitled to recover the balance
due on the account from the complainant, as legatee of Charles
E. Pratt, to the extent to which the personal estate came to her
as legatee, and has not been duly applied to the payment of
debts.    An account will be necessary to ascertain, in the first
place, the balance due to defendants, and, in the second place, to
ascertain the amount of the personal estate of deceased with
which complainant is chargeable for the payment of this balance.
No account can be taken of the real estate devised, for the reason
above stated, the complainant being, as far as appears, simply
devisee, and her liability as such is purely legal and cannot be
enforced in equity.    The defendants' counsel claimed that the
account as presented must be taken as a settled and stated
account, but, even admitting that the pleadings allow it to be so
treated, the evidence relied on to establish this is not sufficient
for this purpose.    It consists mainly of evidence that statements
of each transaction were reported to Mr. Pratt by the brokers
as soon as made; that monthly statements were submitted to
him, showing the state of the accounts or balances at the time,
and that Mr. Pratt, in his lifetime, frequently examined the
accounts, or was familiar with them, and that he made no objec-
tion to them.    This may be sufficient to establish such an
admission by deceased of the correctness of the accounts as will
make them *prima facie* correct and impose on complainant the
burden of showing the incorrectness of any item objected to,
but this evidence is not sufficient to establish an account stated
which is to be enforced between the present parties.    Defend-
ants, at the hearings, objected to inquiries by complainant in
reference to particular items of the account, and this inquiry
being then suspended on their objection, it must be left open to
the complainant on the accounting, to show the particulars in
which the account is incorrect.

This decree for account, in favor of defendants and against complainant as legatee, to enforce an equitable liability on her part as such legatee, must, however, be made upon equitable terms and conditions.

The defendants have in their hands collateral securities for the account, and inasmuch as the complainant as legatee is bound for the payment of debts of deceased only after the exhaustion or application of these securities, the account to be taken therefore will include a statement of these. As to the proceeds of the Arizona mortgage for $5,000, which the defendants held originally as collateral security, the complainant must be charged with this in taking the account. Upon the evidence relating to this, I reach the conclusion that this security was delivered to complainant's agent for the purpose of converting into money to be credited to the account, and it must therefore be accounted for.

In relation to the claim of the defendants to hold the balance admitted to be due from them to complainant on individual account as security for the payment of the balance due them on the Charles E. Pratt account, I overruled or struck out, at the hearing, the evidence upon which the defendants relied to prove an agreement made by Charles E. Pratt to this effect on opening with them the complainant's account. Upon further consideration I see no reason to change this ruling, and relief upon the defendants' cross-bill, so far as it seeks to enjoin the complainant's suit or set-off at law by reason of the alleged agreement, must be denied. There may be a question, however, whether, independent of any agreement and treating the account of complainant as an independent account recoverable at law, the same should not in this suit, upon proper terms as to security &c., be equitably set off against the balance found which may be due to defendants, on the accounting, from complainant as legatee of Charles E. Pratt. This question was not touched on at the hearing, and before settling decree I desire to hear counsel on this point. The suit against complainant as devisee being allowed to proceed, she would of course be entitled to the benefit of her set-off pleaded in that suit; but the set-off may not be available in that suit, and on the other hand, the defendants here

may not be able to recover in their other New Jersey suit at law or to set off in the New York suit at law the equitable claim against complainant as legatee of Charles E. Pratt. Substantially, the case seems to be one where there is a liquidated legal claim on one side and an equitable claim on the other, which is the subject of accounting, and in view of my conclusion to allow the suit at law against complainant as devisee to proceed, and at the same time to allow an accounting against complainant as legatee to be taken in this court, counsel should be heard on the question whether this court should exercise any equitable control over the complainant's prosecution of her claim at law pending the accounting, and if so, upon what terms.